CECIL J. BURRILL *vs.* DAVID STEVENS.

Somerset. Opinion May 9, 1882.

*Fraud. Promissory notes. Contracts.*

When one obtains property by a purchase upon credit with a positive and pre-determined intention, entertained and acted upon at the time of going through the forms of an apparent sale, never to pay for the goods, it is such a fraud as will entitle the seller to avoid the sale, although there are no fraudulent misrepresentations or false pretenses.

This general principle is especially applicable in cases where written instruments and negotiable papers have been fraudulently obtained from the makers.

Where the payees of a promissory note obtained it upon a promise in writing on their part to deliver to the maker at a future time five mowers of different prices and four plows, with a positive and predetermined intention entertained and acted upon at the time never to deliver such mowers and plows, and subsequently delivered two of the plows; *Held,* in an action by an indor-

see of the note against the makers, that the contract of the payees of the note was an entirety; that the plaintiff was entitled to recover at the agreed price for the two plows furnished, less the damages sustained by the defendant for a non-delivery of the balance of the articles at the contract price.

ON EXCEPTIONS AND REPORT.

Assumpsit on the following note:—

"Embden, Maine, October 1, 1874.

One year after date, I promise to pay to the order of C. B. Mahan, agent, four hundred twenty-two dollars, at the first National Bank, Skowhegan, Maine.

Value received.

David Stevens."

Plea, general issue, with the following brief statement:

"And by way of brief statement under the statute, the defendant further says, that said note was procured by fraud and fraudulent representations and that no consideration was ever received for the same, and that the considerations promised utterly failed, and said note never had any validity whatever by reason of said fraud and misrepresentations, and total failure and want of consideration, all of which the plaintiff well knew."

The verdict was in favor of the plaintiff for sixteen dollars and fifty-four cents.

The plaintiff moved to set aside the verdict and also filed exceptions to so much of the charge of the presiding justice as defines what would constitute a fraud in the inception of the note in order to vitiate it, the gist of which is contained in the following extract:

"Now I instruct you as a matter of law, that if it was the mind, the motive, the intent of Thompson, the agent of the company, when he obtained the note, to sell it, and then that the contract on the part of the agricultural works should not be performed, it was such a fraud as would vitiate it. Such is the law. I so instruct you."

The plaintiff also excepted to so much of the charge as authorized the jury to offset any damages that the defendant may have suffered by the non-fulfillment of the contract to deliver mowing machines and plows against the value of the plows actually delivered and received by the defendant.

Other material facts are stated in the opinion.

*Joseph Baker*, for the plaintiff.

The verdict should be set aside. The utmost that the defendant could expect from the evidence, if the law was correctly stated by the presiding justice, would have been a verdict against him for the agreed price of the two plows, $23.50 with interest five and one-fourth years. The verdict was only $16.54. This alone is a sufficient reason to set it aside.

The plaintiff was the purchaser for value of the defendant's promissory note before maturity and the promise of the payees of the note was a good and sufficient consideration. *Burrill* v. *Parsons*, 71 Maine, 282.

But it is said that the note was procured from the defendant by fraud and misrepresentation on the part of the payees. To have constituted a fraud there must have been misrepresentation or false pretences. But there were none. The payees gave a written contract which spoke for itself, which the maker could construe as well as the payees. One contract was the consideration for the other. The failure of one to keep his promise would not excuse the other under the circumstances of this case. But this would be no evidence of fraud. The non-fulfillment of a contract is not evidence of fraud.

The unexpressed intention of the payees, not to deliver the goods, if there had been such an intention, was not such a fraud as will vitiate the note. The fraud must consist of a false representation of an existing fact, not a secret intention. It must have been such a false representation as was calculated to and did induce the plaintiff to sign the note. *Long* v. *Woodman*, 58 Maine, 49.

The instruction that the defendant could offset his damages for the non-fulfillment of the contract of the maker of the note in this suit was erroneous. This plaintiff shouldn't pay such damages. He was not to perform the contract. The rule of law, where there is a partial failure of consideration like this, is to deduct from the whole note, the contract price of the articles not delivered and leave those delivered as they stood in the contract.

The counsel further ably argued the motion to set aside the verdict upon the question of fraud at the inception of the note, contending that there was not sufficient evidence to support a verdict which affirmed that the payees of the note at the time of taking it and giving their contract did not intend to perform their contract.

*D. D. Stewart and A. H. Ware,* for the defendant, cited: 49 Maine, 422; Bigelow on Frauds: *Berry* v. *Alderman,* 14 C. B. 95; *Smith* v. *Sac. County,* 11 Wall, 147; *Harvey* v. *Towers,* 6 Exch. 656; *Dow* v. *Sanborn,* 3 Allen, 181; *Kline* v. *Baker,* 99 Mass. 255; *Wiggin* v. *Day,* 9 Gray, 97; *Rowley* v. *Bigelow,* 12 Pick. 307; *Bryant* v. *Ins. Co.* 22 Pick. 200; *Smith* v. *Braine,* 16 Ad. and El. (N. S.) 244; *Hall* v. *Featherstone,* 3 Hurls. and Nor. 284; *Munroe* v. *Cooper,* 5 Pick. 413; *Bowker* v. *Hoyt,* 18 Pick. 555; Bouvier's Law Dict. "Fraud;" *Oxnard* v. *Swanton,* 39 Maine, 125; *Farrar* v. *Merrill,* 1 Maine, 17; *French* v. *Stanley,* 21 Maine, 512; *Howard* v. *Miner,* 20 Maine, 325; *Thatcher* v. *Dinsmore,* 5 Mass. 302; *Bliss* v. *Negus,* 8 Mass. 46; *Hill* v. *Buckminster,* 5 Pick. 391; *Parish* v. *Stone,* 14 Pick. 202; *Slade* v. *Hood,* 13 Gray, 97; *Daggett* v. *Daggett,* 8 Cush. 520; *Swett* v. *Hooper,* 62 Maine, 54; *Roberts* v. *Lane,* 64 Maine, 108; *Field* v. *Tibbetts,* 57 Maine, 358; *Hapgood* v. *Needham,* 59 Maine, 442; *Perrin* v. *Noyes,* 39 Maine, 384; *Aldrich* v. *Warren,* 16 Maine, 465; *Tucker* v. *Morrill,* 1 Allen, 528; *Sistermans* v. *Field,* 9 Gray, 331.

PETERS, J. The defendant gave a negotiable note in consideration of a promise of the payees of the note to deliver to him at a future time certain mowing machines and plows. The note is sued by an indorsee, and one of the grounds of the defense was, that the payees obtained the note with an intention never to deliver the implements, and that the indorsee, who sues the note, was conusant of the fraud.

The instructions to the jury upon that point present the question, whether getting property by a purchase upon credit, with an intention of the purchaser never to pay for the same, constitutes such a fraud as will entitle the seller to avoid the sale, although there are no fraudulent misrepresentations or false pretences.

The question has never been fairly before this court before this time, so as to require a deliberate decision. The plaintiff contends that the question was settled in the negative in the case of *Long* v. *Woodman*, 58 Maine, 49. But that case falls short of meeting the question presented in the present case. The gist of the charge against the purchaser in that case seems to have been that he fraudulently refused to do after the contract what he agreed to do at the time of the contract, the alleged fraud being an intention formed after the contract rather than contemporaneously with it; and that was an action of deceit based upon a broken promise to convey real estate. Of late years, *nisi prius* rulings in our own courts have frequently been in accordance with the law as delivered to the jury by the presiding judge in the case at bar, and we think the doctrine may safely be accepted and approved, both upon authority and principle.

It is the admitted doctrine of the English cases, and is sustained by most of the courts in the United States. In Benj. on Sales, (2d Amer. ed.) § 440, note *e*, very numerous cases are cited to the proposition. *Stewart* v. *Emerson*, 52 N. H. 301, discusses the question at length, and reviews many authorities.

The plaintiff relies upon the objection that it is not an indictable fraud; an argument which seems to have inclined the Pennsylvania court against admitting the principle into the jurisprudence of that state. *Smith* v. *Smith*, 21 Pa. St. 367; *Backentoss* v. *Speicher*, 31 Pa. St. 324. It has been held by some courts to be an indictable cheat, the false pretence being in the vendee's pretendingly making a purchase, while his only purpose is to cheat the vendor out of his goods. It is more often considered, however, as not a matter for indictment. Bish. Crim. Law, § 419. But the objection, taken by the plaintiff, has, generally, been considered as insufficient to override the rule.

But the doctrine governing the case before us should not be misunderstood. To constitute the fraud, there must be a preconceived design never to pay for the goods. A mere intent not to pay for the goods when the debt becomes due, is not enough; that falls short of the idea. A design not to pay according to

the contract is not equivalent to an intention never to pay for the goods, and does not amount to an intention to defraud the seller outright, although it may be evidence of such a contemplated fraud.

Nor is it enough to constitute the fraud, that the buyer is insolvent, and knows himself to be so, at the time of the purchase, and conceals the fact from the seller, and has not reasonable expectations that he can ever pay the debt. Some courts have gone so far as to denominate that a fraud which will avoid the sale. And it may have been so held in bankruptcy courts, in some instances, as between a vendor and the assignee of the vendee. But it would not, generally, be enough to prove the fraud. The inquiry is not whether the vendee had reasonable grounds to believe he could pay the debt at some time and in some way, but whether he intended in point of fact not to pay it.

Nor is it enough, that after the purchase the vendee conceives a design and forms a purpose not to pay for the goods and successfully avoids paying for them. The only intent that renders the sale fraudulent is a positive and predetermined intention, entertained and acted upon at the time of going through the forms of an apparent sale, never to pay for the goods. *Cross* v. *Peters*, 1 Greenl. 378 ; *Biggs* v. *Barry*, 2 Curtis, (C. C. R.) 259 ; *Parker* v. *Byrnes*, 1 Low. 539 ; *Rowley* v. *Bigelow*, 12 Pick. 306. The general principle is found to have been especially applicable in cases where written instruments and negotiable papers have been fraudulently obtained from the makers of them. *Smith* v. *Braine*, 16 A. and Ell. N. S. 244 ; *Hall* v. *Featherstone*, 3 Hurls. and Nor. 284.

The defendant received a small portion of the goods which were to be sent to him for the note, and the jury were instructed to render a verdict for the price of those articles, less the damages sustained by the defendant for a non-delivery of the balance of the articles at the contract price. That was correct. The defendant was to be no worse off under his contract because he was defrauded than he would have been if not defrauded. Nor does it make a difference that each article was separately priced in the contract. The contract is an entirety, and the damages

are because the articles were not all furnished at the enumerated prices. The plaintiff urges upon our attention that there is no evidence to support any reduction from the price for damages. There is such in the testimony of the defendant.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.